IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CR-338-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) ORDER AND MEMORANDUM AND |
| | ) RECOMMENDATION |
| DEVON LAMAR MARION, | ) |
| | ) |
| Defendant. | ) |

This matter has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) for a memorandum and recommendation on the motion of Defendant Devon Lamar Marion ("Defendant" or "Marion") to suppress and for a *Franks* hearing. Mot. to Suppress Evid. & Req. for a *Franks* Hrg. ("Def.'s Mot.") [DE-33]; *see* Order [DE-41].[1] The government opposes Defendant's motion and all briefing is complete. Govt's Resp. to Def.'s Mot. to Suppress & Req. for a Franks Hrg. ("Govt's Resp.") [DE-40]; Reply Brf. in Supp. of Mot. to Suppress and Req. for Franks Hrg. ("Def.'s Reply") [DE-48]. The court held a hearing on Defendant's motion to suppress. Accordingly, the motions are ripe for ruling. For the reasons stated below, Defendant's request for a *Franks* hearing is denied and it is recommended to the District Court that Defendant's motion to suppress be denied.

## I. STATEMENT OF THE CASE

On November 11, 2012, a grand jury sitting in the Eastern District of North Carolina returned a three-count indictment against Defendant. [DE-1]. Defendant has been charged with

---

[1] Defendant's motion to suppress is considered in accordance with 28 U.S.C. § 636(b)(1)(B) while Defendant's motion for a *Franks* Hearing is considered in accordance with 28 U.S.C. § 636(b)(1)(A).

knowingly and intentionally possessing with the intent to distribute more than 28 grams of cocaine base (crack), a quantity of cocaine and a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1), one count of knowingly and intentionally possessing a firearm in the furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and one count of knowingly possessing in and affecting commerce, a firearm, having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924. *Id.*

## II. DEFENDANT'S MOTIONS

Defendant has moved to suppress evidence obtained from a search of a residence pursuant to a warrant on the grounds that the search warrant and resulting search violated the Fourth Amendment to the United States Constitution. Def.'s Mot. [DE-33] at 1. In conjunction with his motion to suppress, Defendant seeks a *Franks* hearing on the grounds that (1) the affidavit supporting the search warrant contained recklessly false statements and material omissions and (2) with the false material set aside and the material omissions included, the remaining contents of the affidavit are not sufficient to establish probable cause. *Id.*

According to Defendant's motion, Defendant was arrested following the search of a residence located at 612 Connors Cove, Hope Mills, North Carolina, ("the residence") pursuant to a search warrant. Mem. in Supp. of Mot. to Suppress Evid. & Req. for a *Franks* Hrg. ("Def.'s Mem.") [DE-34] at 1-2. According to Defendant, at the time law enforcement prepared the search warrant affidavit, the owner of the residence was Jessica Pedrosa, she and Defendant were involved in a romantic relationship and Defendant was a frequent overnight guest of Pedrosa's residence. *Id.* at 2.

2

The affidavit supporting the search warrant was prepared by Agent E. Plesser ("Plesser"), a Narcotics Agent of the Cumberland County Sheriff's Office and Detective J. Herring ("Herring"), a Narcotics Detective of the Fayetteville Police Department. Ex. A [DE-34-1] at 1, 2. Based on the statements contained in the affidavit, law enforcement sought to enter the residence and to search for and seize illegal controlled substances and items used in illegal controlled substance manufacturing and drug paraphernalia, believing that there was a fair probability that the same would be located inside the residence and the surrounding curtilage. *Id.* at 5.

On or about July 17, 2011, Plesser (as affiant) and Herring ("Herring") (as co-affiant) presented the search warrant affidavit to North Carolina Magistrate Miller in support of a search of the residence. The search warrant affidavit states in relevant part:

> During the month of June 2011 a confidential source of information (CSI) came forward with information on an individual going by the street moniker of "Fat Rat". The CSI stated the following information; "Fat Rat" was a major cocaine distributor in the Fayetteville and Cumberland County area. "Fat Rat" has a house in the Hope Mills area but will drive into Fayetteville to deliver cocaine. "Fat Rat" is known to rent full size trucks and sport utility vehicles to deliver the cocaine. "Fat Rat" is also known to have a blue 4 door vehicle with matching blue wheels.
> The co-affiant was able to take the street moniker "Fat Rat" and using a police database was able to identify the individual. The Co-affiant located the name of Devon Lamar Marion, []. Marion has the alias of "Fat Rat". Marion also matched the physical description given by the CSI.
> The Co-affiant obtained Computerized Criminal History Report for Devon Marion, []. Marion has a history of narcotic violations including Possession of Marijuana and Possession with Intent to Manufacture, Sell, Deliver Marijuana. Marion has a conviction for possession of marijuana 90-95(D)(4).
> On June 22, 2011 the Co-affiant contacted the CSI to look at a photograph. The CSI met with the Co-affiant at a predetermined location. The Co-affiant showed the CSI a photograph of Devon Marion. The CSI immediately identified the individual in the photograph as "Fat Rat."
> Using investigative techniques the Co-affiant discovered a rental agreement where Marion was the primary renter. The vehicle information came back to a 2011 Dodge Ram truck with North Carolina registration, AEL-3208.

3

The vehicle was rented in Marion's name. Marion listed his contact phone number as (910) 354-9476.

The Co-affiant conducted a reverse check on the phone number, (910) 354-9476. The telephone number was listed as a land line to 612 Connors Cove Hope Mills, North Carolina.

On June 23, 2011 the Co-affiant was conducting surveillance on 612 Connors Cove Hope Mills, North Carolina. In the driveway was a blue Dodge Ram truck. The truck had a North Carolina registration plate, AEL-3208, which matched the rental agreement. Next to the house was another vehicle under a car cover. The Co-affiant was unable to see the vehicle but noticed the wheels on the vehicle were painted blue. A few minutes later a black male exited the front of the house and entered the blue Dodge Ram. The subject fit the description of Marion.

The Co-affiant obtained the account information for the Public Works Commission utilities that are supplied to 612 Connors Cove Hope Mills, North Carolina. The information lists Jessica Pedrosa, [], as the primary account holder for the utilities. The utilities have been connected since 08/03/2007.

During the month of July the Co-affiant conducted surveillance on Marion. Marion was observed driving the Dodge truck identified earlier in the affidavit. Marion would leave his residence at 612 Connors Cove Hope Mills, North Carolina and make short trips into known areas for narcotics activity in Fayetteville. Marion's stops would be no longer than a couple of minutes in length. After being at a location for only a few minutes Marion would return to 612 Connors Cove Hope Mills North Carolina.

Several times a day Marion would leave 612 Connors Cove Hope Mills, North Carolina and travel to Back Street Fayetteville, North Carolina. Marion would arrive to the area, park and leave after a few minutes passed. Marion would go directly back to 612 Connors Cove Hope Mills, North Carolina. Surveillance conducted in a previous investigation into the distribution of illegal controlled substances in the Fayetteville area led Fayetteville Police Department Detectives to Back Street Fayetteville, North Carolina. That investigation led to an arrest of an individual who was selling cocaine base in the Fayetteville area.

On July 06, 2011 the Co-affiant observed an older model blue car with blue wheels in the drive way of 612 Connors Cove, Hope Mills, North Carolina. A check with the Department of Motor Vehicle revealed Marion is the owner of a 1996 Chevrolet Caprice with North Carolina registration, THA4, VIN, 1G1BL52P2TR115991. The Co-affiant could see the head rests of the front seats had "Fat Rat" stitched into them.

On July 08, 2011 the Co-affiant collected the refuse from the residence at 612 Connors Cove Hope Mills, North Carolina. The refuse was collected using the standard operating procedure developed by the Fayetteville Police Department's Narcotics/Vice Suppression Unit to ensure adherence to all guidelines established by case law involving the Forth [sic] Amendment of the Constitution of the United States of America.

The Co-affiant conducted an inspection into the refuse at 612 Connors Cove Hope Mills, North Carolina. During the investigation items seized

consisted of: 6 plastic sandwich bags with the corners torn off and an empty box of plastic sandwich bags. The torn plastic bags were located inside of the empty sandwich bag box. The torn plastic sandwich bags were consistent with the packaging and repackaging of controlled substances for sale in the Fayetteville and Cumberland County area.

On July 13, 2011, Marion was observed by the Co-affiant returning the Dodge rental. Using investigative techniques the Co-affiant was able to discover Marion rented a 2011 Ford Explorer with North Carolina registration, AAX-8342. The Co-affiant was able to observe the silver Ford Explorer in the driveway of 612 Connors Cove Hope Mills, North Carolina on July 14, 2011.

On July 15, 2011 the Co-affiant collected the refuse from the residence at 612 Connors Cove Hope Mills, North Carolina. The refuse was collected using the standard operating procedure developed by the Fayetteville Police Department's Narcotics/Vice Suppression Unit to ensure adherence to all guidelines established by case law involving the Forth [sic] Amendment of the Constitution of the United States of America.

The Co-affiant conducted an inspection into the refuse at 612 Connors Cove Hope Mills, North Carolina. During the investigation items seized consisted of: 9 plastic sandwich bags with the corners torn off. The torn plastic sandwich bags were consistent with the packaging and repackaging of controlled substances for sale in the Fayetteville and Cumberland County area.

Based on factual information provided in this affidavit, the Co-affiant wishes the court to issue a warrant to enter the residence, search for, and seize any and all illegal controlled substances, items used in illegal controlled substance manufacturing and drug paraphernalia. The Co-affiant believes there is a fair probability that controlled substances, items of illegal drug manufacturing, and drug paraphernalia exist at 612 Connors Cove, Hope Mills, North Carolina and inside the curtilage surrounding 612 Connors Cove Hope Mills, North Carolina.

Ex. A [DE-34-1] at 3-5.

In support of his motion for a *Franks* Hearing, Defendant challenges the affidavit on four bases. *See* Def.'s Mem. [DE-34] at 4-7. First, Defendant contends the affidavit recklessly and materially misrepresented Defendant's criminal history in an effort to establish probable cause to support the search warrant. Second, according to Defendant, law enforcement was directed to the residence after Herring conducted a "reverse telephone number look-up" of a telephone number corresponding to 612 Connors Cove, Hope Mills, North Carolina. Defendant contends however that the telephone number corresponds to a cellular telephone of someone <u>other than</u>

5

Defendant located in another part of the state. Third, Defendant contends Herring's affidavit statement regarding the vehicle registration check of the automobile located in the driveway of the residence was recklessly and materially false because the check was performed three weeks after the search warrant. Finally, Defendant contends the affidavit fails to provide details as to the location of the refuse or the manner in which it was collected by law enforcement and that the magistrate was likely misled by Herring's statement regarding the procedure followed in searching trash from the residence.

Next, apart from the issues compelling a *Franks* hearing, Defendant argues the affidavit lacked probable cause to believe that evidence of controlled substances would be located in the residence. Def.'s Mem. [DE-34] at 1, 7. In particular, Defendant argues: (1) the affidavit fails to establish the veracity, reliability or basis of knowledge of the informant; (2) the informant corroborated only innocent details contained in the warrant affidavit; and (3) the search of the trash failed to reveal any drug residue and/or failed to establish a sufficient nexus to the residence. *Id.* at 7-9.

### III. DISCUSSION

**A.   Defendant's Request for a *Franks* Hearing**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that under certain narrowly-defined circumstances a defendant may attack a facially sufficient affidavit. The *Franks* court recognized a strong "presumption of validity with respect to the affidavit supporting the search warrant," *id.* at 171, and thus created a rule of "limited scope." *Id.* at 167. The rule from *Franks* requires a dual showing be made by a defendant which includes both a subjective and objective threshold. *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). In order to obtain an evidentiary hearing on the integrity of the affidavit, a defendant must first

6

make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56. A defendant's showing however "must be more than conclusory" and must be accompanied by a detailed offer of proof. *Id.* at 171. A defendant's burden is not only to point out specifically the portion of the affidavit claimed to be false and provide reasons for the falsity, but a defendant must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence. *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008) (quoting *Franks*, 438 U.S. at 171). The burden of making the necessary showing is a heavy one and allegations of "negligence or innocent mistake are insufficient." *Id.*; *see United States v. Chavez*, 902 F. 2d 259, 265 (4th Cir. 1990) (defendant must show that the agent affirmatively tried to mislead magistrate to warrant *Franks* hearing; ambiguity or lack of clarity is not sufficient). Additionally, the false information must be essential to the court's determination of probable cause; in other words, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 171-72); *see United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000) ("*Franks* thus serves to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause.").

When relying on omitted facts from an affidavit to show its deceptiveness rather than an affirmative false statement, a defendant faces an even greater burden. *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011); *Tate*, 524 F.3d at 454-55 (citing *Colkley*, 899 F.2d at 297). Indeed, the Fourth Circuit has recognized that an affidavit drafted by non-lawyers submitted in

7

support of a search warrant application "cannot be expected to include. . . every piece of information gathered in the course of an investigation." *Tate*, 524 F.3d at 455 (quoting *Colkley*, 899 F.2d at 300). Moreover, "because every piece of information cannot be expected to be included, the very process of selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information. Certainly, such intentional omissions do not satisfy the requirement of *Franks*." *Id.* at 455; *Colkley*, 899 F.2d at 300-01(a showing of intentional omission is not enough to merit a *Franks* hearing; rather, a defendant must show the omission was designed to mislead or was made with reckless disregard whether it had a misleading effect); *see Clenney*, 631 F.3d at 664 (merely identifying factual omissions from warrant affidavit not sufficient). Likewise, the information omitted from the warrant affidavit must be material. *See Colkley*, 899 F.2d at 301("[T]o be material under *Franks*, an omission must do more than potentially affect the probable cause determination; it must be 'necessary to the finding of probable cause'") (quoting *Franks*, 438 U.S. at 156). "Omitted information that is potentially relevant but not dispositive [of probable cause] is not enough to warrant a *Franks* hearing." *Id.*

   *1. Defendant's Criminal History*

Defendant first challenges the affiant's purported misrepresentation of Defendant's criminal history in an effort to establish probable cause. The affidavit states that Defendant "has a history of narcotic <u>violations</u> including Possession of Marijuana and Possession with Intent to Manufacture, Sell, Deliver Marijuana. Marion has a <u>conviction</u> for possession of Marijuana. 90-95(D)(4)." Ex. A [DE-34-1] at 3 (emphasis added). Defendant's purported criminal history as reflected in a computerized criminal history report indicates Defendant was charged with felony possession with intent to manufacture, sell and/or deliver marijuana but that he pleaded

guilty to a lesser offense and was convicted of misdemeanor possession of marijuana.[2] Ex. B [DE-34-2] at 1. Defendant has also been convicted of misdemeanor possession of drug paraphernalia. *Id.* Defendant does not dispute, and indeed cannot challenge, that he has a history of narcotic convictions. Rather, Defendant takes issue with the statement in the affidavit that he has a history of narcotic violations referring to the felony drug charge for which he was not convicted. Def.'s Mem. [DE-34] at 5. Defendant argues that referring to this charge as a part of a "history of narcotics violations" is a reckless and material misrepresentation. Defendant argues further that Herring's misstatement is material because it provided the magistrate with the false impression that Defendant "has a long, drug-related criminal history, riddled with serious felony drug convictions related to the distribution of controlled substances." *Id.* at 5. Furthermore, Defendant contends the affidavit omitted the fact that one drug "violation" was a misdemeanor related to an amount of marijuana indicative of personal use, the conviction of which occurred 15 years before the instant offense. *Id.* Defendant argues the omission is material because the information would have given the magistrate an accurate portrayal of Defendant's criminal history. *Id.*

The affidavit statement regarding Defendant's criminal history is not false or misleading nor was it made with reckless disregard for the truth. In stating Defendant was convicted of possession of marijuana (a true statement), the affidavit adequately draws a distinction with the statement that "Defendant has a history of narcotics violations" which is a non-descriptive

---

[2] Neither party challenges the authenticity of the exhibit Defendant has proffered as reflecting his criminal history. The exhibit appears to indicate further that Defendant was charged with five non-drug related felony offenses, one of which resulted in a conviction, while the others were dismissed without leave and a single misdemeanor traffic offense which was discharged. Ex. B [DE-34-2] at 2-3.

statement describing Defendant's criminal history. There is no authority for Defendant's contention that his fifteen year old misdemeanor conviction is false, misleading or made with reckless disregard for the truth, as it is in fact accurate.

Moreover, considering the content of the affidavit that is not challenged by Defendant, striking a portion of the one sentence challenged by Defendant would not affect the probable cause determination thereby requiring a hearing under *Franks*. The information provided by the informant was corroborated by law enforcement's independent investigation of Defendant spanning at least three weeks. The informant provided law enforcement with information regarding an alleged cocaine dealer known as "Fat Rat." The informant advised further that Fat Rat's modus operandi was to rent trucks and sport utility vehicles (SUVs) in which to deliver cocaine in the Fayetteville area from a home located in Hope Mills. The informant told law enforcement further that Fat Rat had a blue car with blue wheels. Armed with this information, law enforcement searched a police database which revealed that Devon Lamar Marion was known as "Fat Rat" and had been convicted of misdemeanor possession of marijuana and drug paraphernalia. Law enforcement provided the informant with a photograph of Marion whom the informant identified as "Fat Rat." Herring discovered a rental agreement and learned that Defendant was renting a Dodge truck. Herring then traced the telephone number Defendant had provided in the rental agreement to a residence located in Hope Mills. Herring surveilled the residence and was able to identify the rented Dodge truck in the driveway of the residence along with another car which had blue wheels. During the surveillance, Herring observed Defendant exit the residence and get into the Dodge truck. On separate occasions, while surveilling the residence, Herring observed Defendant drive the rented Dodge truck from the residence to an area in Fayetteville known for illegal narcotics activity. During these trips Defendant would

10

remain for a short period then return to the residence. Herring subsequently observed Defendant return the rented Dodge truck and learned that Defendant had rented a Ford SUV which he later observed in the driveway of the residence. On another occasion, again while surveilling the residence, Herring observed an older model blue car with blue wheels in the driveway of the residence and observed further that the front seat headrests of the vehicle were embroidered with the name "Fat Rat." Herring confirmed with records of the North Carolina Department of Motor Vehicles that Defendant owned the blue car.

Based on the unchallenged portions of the search warrant affidavit detailing law enforcement's independent investigation, including verification of the informant's information, surveillance of Defendant, the residence and automobiles used or owned by Defendant, there is sufficient probable cause to support the search of the residence, thereby not requiring a hearing under *Franks*.

   2.   *Reverse Number Look-Up*

Defendant argues next that the results of the reverse number look-up connecting Defendant's telephone number to the residence is a material misrepresentation made in reckless disregard for the truth. Def.'s Mem. [DE-34] at 5; Ex. A [DE-34-1] at 3. Defendant has attached to his brief an exhibit which Defendant contends demonstrates that the land-line telephone number erroneously attributed to Defendant corresponds to the cellular telephone of another individual located in another part of the state. Def.'s Mem. [DE-34] at 3, 5; Ex. C [DE-34-3]. Defendant's challenge is conclusory and unsupported by reliable evidence of material misrepresentation or reckless disregard for the truth. The exhibit is not authenticated and therefore does not constitute reliable evidence with which Defendant may overcome its heavy burden. *See Tate*, 524 F.3d at 454 (Defendant must furnish "'[a]ffidavits or sworn or otherwise

11

reliable statements of witnesses' or explain their absence.") (quoting *Franks*, 438 U.S. at 171). Moreover, and even as Defendant concedes, Defendant's exhibit is dated approximately eight months after the search warrant application further militating against its reliability. Def.'s Mem. [DE-34] at 5.

Defendant nonetheless contends that the reckless disregard for the truth is established by the fact that the "reverse number look-up" shows the telephone number to be associated with a cellular telephone rather than a land-line. *Id.* at 6; Def.'s Reply [DE-48] at 3. Thus, according to Defendant, if the number were a cellular telephone the number would not have directed the government to the target residence. Def.'s Mem. [DE-34] at 6. Defendant argues that the difference is significant and makes the misrepresentation material because the government's statement that the telephone number was a land-line is the government's direct link to Defendant at the residence. *Id.* Underlying Defendant's theory however is an unexplained understanding as to how telephone numbers are assigned. In particular, Defendant contends that a telephone number assigned to one telephone as a land-line may not be reassigned as a cellular telephone number. Defendant fails however to provide the court with an adequate offer of proof as to how the phone number, even if reassigned, would necessarily not have been a land-line when the government was conducting its investigation of Defendant. Because Defendant has failed to satisfy his burden as to his offer of proof, this court does not believe the statement contained in the search warrant affidavit has been shown to be false, misleading or recklessly made.

3. *Vehicle Registration Search*

Next, Defendant argues Herring's statement regarding the vehicle registration check of the vehicle located in the driveway of the residence was recklessly and materially false. Def.'s Mem. [DE-34] at 6. Defendant argues the results of the check were used to establish a link

12

between Defendant and the residence, but that the only evidence "at this time" of the vehicle registration check "suggests" that the check was performed three weeks after the search warrant. *Id.*; Ex. D [DE-34-4].[3] Defendant's argument is conclusory as it merely points to a statement that "may be" false. The exhibit however is not authenticated and while it appears to contain information relative to Defendant, the North Carolina Motor Vehicle Registration System, and date information of "Recv Time:07/27/2011 09:22:38," it is altogether unclear what this information means. Moreover, Defendant fails to explain how the challenged statement is materially false and reckless. Def.'s Mem. [DE-34] at 6. Indeed, it appears from the affidavit that law enforcement's efforts in tracing the telephone number Defendant had provided in a rental agreement lead the authorities to the residence rather than the vehicle registration as Defendant contends. *See* Ex. A [DE-34-1] at 3. Based on Defendant's failure of proof, the court does not find that the statement was materially false, misleading or made recklessly.

### 4. *Search of the Trash*

The affidavit states that the refuse attributed to the residence was collected using the police department standard operating procedure to ensure that the trash was searched in compliance with the Fourth Amendment. Defendant argues this statement is misleading because while there are specific sections in the Fayetteville Police Department operating procedures referring to the Narcotics Unit and to the collection of evidence, no provision exists regarding the collection of refuse during an investigation. Def.'s Mem. [DE-34] at 6-7; Exs. E, F [DE-35-

---

[3] While it appears Defendant's exhibit may have been produced in discovery, Defendant does not state the source of the exhibit or the basis on which Defendant contends the check was performed after the search warrant. For its part, the government responds that its exhibit shows results from the vehicle registration search dated June 22, 2011. Gov't Resp. [DE-40] at 6; Ex. D [DE-40-4].

13

1,-2]. Defendant contends the false statement is material because it suggests that the refuse collection was conducted in a constitutional manner. Def.'s Mem. [DE-34] at 7. Defendant argues that the magistrate was likely misled by Herring's statement regarding the procedure followed in searching trash from the residence. Defendant contends the magistrate reasonably assumed that the procedures referenced in the affidavit referred to a particular provision in the Fayetteville Police Department's operating procedures setting forth the exact procedures in which refuse is collected in compliance with the Fourth Amendment. *Id.* at 6. Defendant argues further the affidavit provides no details as to the location of the refuse or the manner in which it was collected by law enforcement. *Id.*

The government responds that the refuse was collected using reasonable investigative procedures. Gov't Resp. [DE-40] at 6. The government contends that although there are no enumerated written operating procedures specifically directed to the collection of trash, there are written procedures applicable to narcotics investigations and to search warrants. *Id.* at 6-7 (referring to Exs. 5, 6 [DE-40-6. -7]). The referenced policy applies to the review of a search warrant by a supervisor and the execution of a search warrant. *See* Ex. 5 [DE-40-6] at 5 (providing "[t]he Narcotics Unit will conduct searches in compliance with the Operating Procedure entitled Search Warrant Execution."). Nothing in the policy provided to the court concerns the search of trash or indicates that searches are conducted within the parameters of the Constitution. The government argues that merely because there was no policy called "trash collection" does not mean the procedures were unreliable. Gov't Resp. [DE-40] at 6-7.

The government's argument however is misplaced; the proper focus is on what information the government conveyed to the magistrate in the warrant. Here the affidavit conveyed the search of the trash was conducted in accordance with a policy that does not appear

14

to exist. Although the statement challenged by Defendant is indeed false, upon considering the affidavit in its entirety, as set forth above, the infirmities urged by Defendant with respect to the trash pull are immaterial to the finding of probable cause.

**B.     Motion to Suppress/Lack of Probable Cause[4]**

Defendant argues the affidavit lacked probable cause to believe that evidence of controlled substances would be located in the residence. Def.'s Mem. [DE-34] at 1, 7. In particular, Defendant argues: (1) the affidavit fails to establish the veracity, reliability or basis of knowledge of the informant; (2) the informant corroborated only innocent details contained in the warrant; and (3) the search of the trash failed to reveal any drug residue and/or failed to establish a proper nexus to the residence. *Id.* at 7-9.

> A magistrate presented with a search warrant application must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit. . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*United States v. Lalor*, 996 F.2d 1578, 1580 (4th Cir. 1993)(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). An important factor in determining whether information from an informant establishes probable cause is the degree to which the information is corroborated. *Id.* at 1581 (citation omitted). Although the informant's veracity, reliability and basis of knowledge are relevant, these factors are no longer independent requirements. *Id.* (citing *Gates*, 462 U.S. at

---

[4]     Defendant's argument conflates the second prong of the *Franks* showing and grounds on which to suppress evidence for lack of probable cause. Defendant argues that the affidavit lacked probable cause to believe that controlled substances, illegal drug manufacturing and drug paraphernalia would be located in the residence. Def.'s Mem. [DE-34] at 7. Defendant argues the evidence seized should be suppressed because with the alleged false affidavit statements set aside, the remaining contents of the affidavit fail to establish probable cause. *Id.* at 7-9; Def.'s Reply [DE-40] at 7.

15

230). Indeed, the "[c]orroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct." *Id.* (citing *Gates*, 462 U.S. at 244 ("[A]n informant [who] is right about some things . . . [is] more probably right about other facts."))(subsequent citations omitted). Defendant argues that the corroboration of the information provided by the informant is not significant because the information was only innocent details. In this case, however, confirmation of Defendant's identity, address, Defendant's use of a particular type of rental vehicles, description and surveillance of his automobile and Defendant's travel to the Fayetteville area gives credence to the allegations of criminal activity.

In determining whether a search warrant is supported by probable cause, the crucial question is whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *Lalor*, 996 F.2d at 1582 (citation omitted). "The nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Id.* (citation omitted). A nexus may exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant "contains no factual assertions directly linking the items sought to the defendant's residence." *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (citation omitted) (declining to require specific evidence of the existence of drugs in a residence when other facts establish probable cause for the search and common sense indicated contraband was likely to be located within the residence). Under the circumstances here, it is reasonable to suspect that a drug dealer would store drugs and items used in the sale of drugs in a residence in which he stays, at which he appears to maintain two automobiles, to which he provided the telephone contact information per a automobile rental agreement, and from which he is alleged

16

to travel to sell drugs. *See id.* at 217-18 (a sufficient nexus was established between a defendant's suspected drug activity and three residences to which he had access and in which he periodically stayed); *see United States v. Williams*, 974 F.2d 480, 481-82 (4th Cir. 1992) (a sufficient was established nexus between a known drug dealer and motel room in which he was staying). The affidavit describes circumstances that indicate such evidence was likely to be stored at the residence.

Finally, Defendant argues that the search of the trash by the police fails to support probable cause because the search failed to result in the seizure of controlled substances, drug residue or drug paraphernalia. Def.'s Mem. [DE-34] at 8. While the discovery of such evidence would tend to support probable cause, *see United States v. Montieth*, 662 F.3d 660, 664-65 (4th Cir. 2011), the lack of such evidence cannot be dispositive of the absence of probable cause. *Id.* at 665 ("to require that the affiant amass every piece of conceivable evidence before seeking a warrant is to misunderstand the burden of probable cause.") (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969) ("[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.")). Indeed, the concept of probable cause is not subject to a precise definition. *See United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010). Rather, probable cause plainly "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). An assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test. *See Gates*, 462 U.S. at 230–31; *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). The information contained in the search warrant affidavit provided substantial support for the common-sense conclusion drawn by

the magistrate of the probability of finding the items sought by law enforcement at the place sought to be searched.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for a *Franks* hearing [DE-33] is denied and it is recommended the Defendant's motion to suppress be denied.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation. Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 5th day of June, 2012.

_____
Robert B. Jones, Jr.
United States Magistrate Judge